John H. Mowbray (NV Bar No. 1140)
Mary E. Bacon (NV Bar No. 12686)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 950
Las Vegas, Nevada 89101
Telephone: 702-408-3400
Facsimile: 702-408-3401
Email: jmowbray@spencerfane.com
Email: mbacon@spencerfane.com
*Attorneys for Defendant*
*NPAS SOLUTIONS, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LEISA WHITTUM, individually, and behalf of all others similarly situated, | Case No. 2:19-CV-00877-JAD-GWF |
| Plaintiff, | **DEFENDANT NPAS SOLUTIONS, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTON TO STRIKE PLAINTIFF'S CLASS DEFINITION AND ALLEGATIONS** |
| v. | |
| NPAS SOLUTIONS, LLC, | |
| Defendant. | (Oral Argument Requested) |

## TABLE OF CONTENTS

Table of Contents ............................................................................................................... i

Table of Authorities .......................................................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

PRELIMINARY STATEMENT .........................................................................................1

Background..........................................................................................................................3

ARGUMENT .......................................................................................................................5

I.   The Court Should Dismiss Plaintiff's Individual Claim Because She Does Not Make
Plausible Claims That NPAS Solutions Violated the Law.........................................................5

   A.   Plaintiff's TCPA Claim Must Be Dismissed Because She Does Not Plausibly Allege She
Was Called by an ATDS ...................................................................................................6

   B.   Plaintiff's NDPTA Claim Must Be Dismissed Because the Statute Does Not Apply to
Debt Collection ..................................................................................................................8

   C.   Plaintiff's Claim for Intrusion upon Seclusion Must Be Dismissed Because the FAC
Contains Only Legal Conclusions Regarding the Elements of This Cause of Action................9

II.   The Court Should Strike the Class Allegations Because Plaintif Fails to Plead a Class
Definition That Satisfies Rule 23 ..............................................................................................10

   A.   Plaintiff's TCPA Class Allegations Should Be Struck Because She Alleged a Fail-Safe
Class That Cannot Be Certified ...........................................................................................11

   B.   Any Effort to Fix Plaintiff's Class Definitions Would Introduce Individualized Issues
That Would Overwhelm a Class Proceeding.........................................................................13

      1.   Plaintiff's TCPA Class Definition Requires Individualized Adjudication of Allegations
That a Call Recipient Revoked Consent ............................................................................14

      2.   Plaintiff's TCPA Class Definition Also Requires Individualized Adjudication of
Allegations That a Call Recipient Never Provided Prior Express Consent...........................18

   C.   Plaintiff's State and Common Law Class Claims Should Be Struck Because They Also
Raise Individualized Issues.................................................................................................21

CONCLUSION...................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*ACA International v. Federal Communications Commission*, 885 F.3d 687
(D.C. Cir. 2018) ...................................................................................... 19, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 2, 5, 6, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................... 2, 6, 7, 10

*Blair v. CBE Grp., Inc.*, 309 F.R.D. 621 (S.D. Cal. 2015) ........................................... 21

*Botelho v. Tech. Med. Advancements LLC*, No. 216CV08085SVWMRW,
2017 WL 10521412 (C.D. Cal. Dec. 22, 2017) .................................................. 21

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015) ................................. 13

*Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019 (D. Nev. 2018) ........................................ 11, 19

*Cholly v. Uptain Grp., Inc.*, No. 15 C 5030, 2017 WL 449176 (N.D. Ill. Feb. 1, 2017) ............. 17

*Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12-CV-1721-BEN WVG, 2014 WL 1744136
(S.D. Cal. Apr. 30, 2014) *aff'd*, 671 F. App'x 989 (9th Cir. 2016) ...................................... 20

*Cole v. Gene by Gene, Ltd.*, 735 F. App'x 368 (9th Cir. 2018) .......................................... 14

*Craftwood II, Inc. v. Wurth Louis & Co.*, No. SACV1700606DOCKESX,
2018 WL 6258883 (C.D. Cal. Oct. 2, 2018) ......................................................... 21

*Danhey v. Time Warner Cable Enters.*, 2015 WL 5534094 (E.D.N.C. Aug. 6, 2015) ............... 20

*Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931 (9th Cir. 2009) ........................................ 14, 22

*Dixon v. Monterey Fin. Servs., Inc.*, No. 15-CV-03298-MMC, 2016 WL 4426908
(N.D. Cal. Aug. 22, 2016) ............................................................................... 11, 13

*Dobson v. Sprint Nextel Corp.*, No. 2:13-CV-00816-GMN, 2014 WL 553314
(D. Nev. Feb. 10, 2014) .................................................................................. 9, 10

*Elkins v. Medco Health Solutions, Inc.*, No. 4:12 CV 2141 TIA, 2014 WL 1663406
(E.D. Mo. Apr. 25, 2014) ................................................................................ 15

*Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 WL 6073426
(N.D. Cal. Nov. 18, 2013) ............................................................................... 17

*Flores v. Adir Int'l*, No. CV1500076ABPLAX, 2015 WL 12806476
(C.D. Cal. May 8, 2015) ................................................................................. 7

*Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789 (9th Cir. 2018) ........................ 15, 17

*Gage v. Cox Commc'ns, Inc.*, No. 216CV02708KJDGWF, 2017 WL 1536219
  (D. Nev. Apr. 27, 2017) ................................................................ 8

*Gannon v. Network Tel. Servs., Inc.*, 628 F. App'x 551 (9th Cir. 2016) .................................... 21

*Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008) ................................ 14

*Gutierrez v. Barclays Grp.*, No. 10CV1012 DMS BGS, 2011 WL 579238
  (S.D. Cal. Feb. 9, 2011) ............................................................... 19

*Hazan v. Wells Fargo & Co.*, 2019 WL 1923272 (D.N.J. April 30, 2019) .................................. 7

*Hulsey v. Peddle, LLC*, No. CV 17-3843 DSF (ASX), 2017 WL 8180583
  (C.D. Cal. Oct. 23, 2017) .............................................................. 7

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  30 FCC Rcd. 7961 (2015) ........................................................ 17, 20

*Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ............... 7

*Kamar v. RadioShack Corp.*, 375 Fed. App'x 734 (9th Cir. 2010) ............................... 11

*Kervin v. GC Servs., Ltd. P'ship*, No. 2:13-CV-01461-MMD,
  2014 WL 584966 (D. Nev. Feb. 12, 2014) ....................................... 8

*Knutson v. Reply!, Inc.*, 2011 WL 291076 (S.D. Cal. Jan. 207, 2011) .......................... 7

*Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-CV-221 CEJ,
  2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ..................................... 13

*Linlor v. Five9, Inc.*, No. 17-cv-218, 2017 WL 2972447 (S.D. Cal. July 11, 2017) ................. 7

*Lith v. Iheartmedia + Entm't, Inc.*, No. 1:16-CV-066-LJO-SKO,
  2016 WL 4000356 (E.D. Cal. July 25, 2016) ................................ 12, 13

*Maldonado v. HSBC Mortgage Sys., Ind.*, No. 2:16-CV-00784JADVCF,
  2017 WL 3496460 (D. Nevada Aug. 215, 2015) ............................... 10

*Marshall v. CBE Grp., Inc.*, No. 216CV02406GMNNJK, 2018 WL 1567852
  (D. Nev. Mar. 30, 2018) .............................................................. 8

*Murray v. Fin. Visions, Inc.*, No. CV-07-2578-PHX-FJM, 2008 WL 4850328
  (D. Ariz. Nov. 7, 2008) ............................................................... 22

*Orsatti v. Quicken Loans, Inc.*, No. 215CV09380SVWAGR, 2016 WL 7650574
  (C.D. Cal. Sept. 12, 2016) ............................................................ 7

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) ........................... 19

*Park v. Braun*, 181 F. App'x 670 (9th Cir. 2006) ...................................................... 6

ii

*Peatroswky v. Persolve*, No. 2:12-cv-935, 2014 WL 1215061
(D. N.V. March 24, 2014) ............................................................................................ 7

*People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269 (1995),
*overruled in part on other grounds*, 940 P.2d 134 (Nev. 1997) ................................ 9

*Pepka v. Kohl's Dep't Stores, Inc.*, No. CV164293MWFFFMX, 2016 WL 8919460
(C.D. Cal. 2016) ................................................................................. 11, 13, 17

*Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011) ......................... 12

*Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247
(N.D. Cal. Apr. 28, 2019) ........................................................................................ 18

*Roark v. Credit One Bank, N.A.*, 2018 WL 5921652 (D. Minn. Nov. 13, 2018) ....................... 20

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460
(6th Cir. 2017) ............................................................................................................ 14

*Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV-14-6256-JGB-JPRX,
2016 WL 3456939 (C.D. Cal. Apr. 14, 2016) ................................................. 17, 18

*Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2015 WL 5604400
(S.D. Cal. Sept. 23, 2015) ........................................................................................ 19

*Steinhoff v. Star Tribune Media Co.* LLC, No. 13-CV-1750 SRN/JSM,
2014 WL 1207804 (D. Minn. Mar. 24, 2014) ......................................................... 15

*Stiller v. Costco Wholesale Corp.*, 673 F. App'x 783 (9th Cir. 2017) ......................... 14

*Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2015 WL 709201
(C.D. Cal. Jan. 16, 2015) ......................................................................................... 10

*Trenk v. Bank of America*, 2017 WL 4170351 (D.N.J. Sept. 18, 2017) ......................... 8

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) ................................................................................... 14

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ............................ 14, 22

*Wellesley v. Chief Financial Officer*, No. 3:10-CV-00183-LRH,
2010 WL 2926162 (D. Nev. July 20, 2010) ............................................................. 10

*Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287 (N.D. Ill. 2014) ................. 17

*Woods v. U.S. Bank N.A.*, 831 F.3d 1159 (9th Cir. 2016) ................................................. 6

*Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 625
(E.D. Pa. 2015) ......................................................................................................... 13

**STATUTES**

Fed. R. Civ. P. 12 ................................................................................... 1, 6, 10, 11, 13

Fed. R. Civ. P. 23 .......................................................... 1, 2, 3, 10, 13, 14, 17, 22

Nev. Rev. Stat. Ann. § 41.600 ................................................................................. 9

Nev. Rev. Stat. Ann. § 598.0918 .................................................................. 8, 9, 22

Telephone Consumer Protect Act, 47 U.S.C. § 22 ............................................ 1, 6, 7, 8

**OTHER AUTHORITIES**

1992 TCPA Order, 7 FCC Rcd. 8752 (Oct. 16, 1992) ................................... 15

ACA Declaratory Ruling, 23 FCC Rcd. 559 (Jan. 4, 2008) ....................................... 15

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    TCPA Omnibus Declaratory Ruling and Order, FCC 15-72 (Rel. July 10, 2015)................. 15

Bureau of Consumer Protection, Nevada Office of the Attorney General,
    http://ag.nv.gov/About/Consumer_Protection/Bureau_of_Consumer_Protection (last
    visited July 8, 2019)........................................................................................ 8

Indeed.com, company reviews, available at
    https://www.indeed.com/cmp/Npas/reviews?start=20 (last visited August 3, 2019)............... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant NPAS Solutions, LLC ("NPAS Solutions") respectfully moves this Court (*i*) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff Leisa Whittum's ("Plaintiff") First Amended Complaint ("FAC"), or, in the alternative, (*ii*) pursuant to Rule 12(f), to strike Plaintiff's class definitions and allegations.

**PRELIMINARY STATEMENT**

Plaintiff's second attempt at bringing this action only confirms her inability to plead a plausible violation of the Telephone Consumer Protect Act, 47 U.S.C. § 227 ("TCPA") or a class definition that satisfies all of the elements of Rule 23.

NPAS Solutions moved to dismiss Plaintiff's original complaint because it suffered from two fundamental defects. ***First,*** she pled only conclusory and threadbare allegations in support of her claim that NPAS Solutions' calls to her violated the TCPA, and her allegations under Nevada and common law fail as a matter of law. ***Second,*** Plaintiff's proposed TCPA class definition was an impermissible "fail-safe" class, and it was clear on the face of all three class definitions that highly individualized inquiries would be required. In her FAC, Plaintiff changed just one paragraph: she added some highly speculative allegations in support of <u>her individual TCPA claim</u>. The Court should therefore dismiss the FAC or, at minimum, strike the class allegations.

**Plaintiff's individual claims should be dismissed.** Plaintiff cannot state a TCPA claim because she does not properly plead one of the essential elements of any TCPA claim, namely that calls were placed using an automatic telephone dialing system ("ATDS").

In her second attempt at meeting this requirement, Plaintiff does not plead any facts regarding NPAS Solutions' alleged calls to her that would support an inference that it used an ATDS. Instead, FAC relies on an anonymous entry on an internet job board regarding an entity known as "NPAS" in which the alleged employee complained about a quota of having to

1

complete fourteen calls per hour.  From this, the FAC speculates that this quota could be achieved only if calls were made via ATDS.  Plaintiff's argument is utterly inconsistent with a portion of the post she omits, in which the supposed employee complained that this quota was unrealistic because some calls lasted as long as 45 minutes to an hour or more.  Regardless, Plaintiff's reliance on this internet posting cannot support the allegation that NPAS Solutions used an ATDS because, among other things, (*i*) the website relates to an entity called "NPAS," not defendant NPAS Solutions, LLC; (*ii*) the entry is anonymous, meaning it is impossible to determine whether an employee of NPAS Solutions, LLC actually made the referenced statement; and (*iii*) Plaintiff does not substantiate the speculation that the only way to meet the supposed quota is to use an ATDS.  The Supreme Court's *Iqbal* and *Twombly* decisions and numerous decisions in the Ninth Circuit make abundantly clear that a claim based on the type of speculation that Plaintiff uses here must be dismissed.

Plaintiff's other non-TCPA claims are equally deficient.  Plaintiff's claim under the Nevada Deceptive Trade Practices Act (the "NDTPA") fails because the statute does not apply to debt collectors.  Finally, Plaintiff's common law claim for the tort of intrusion upon seclusion rests on wholly conclusory allegations that could not plausibly state a claim for tortious conduct. Therefore, Plaintiff fails to state a claim on each count in the FAC.

**Plaintiff's class allegations should be struck.**  It is clear on the face of the FAC that Plaintiff cannot plead a class definition that meets all the elements of Rule 23.  Her proposed TCPA class definition is an impermissible "fail-safe" class because the definition simply recites the elements of a TCPA claim.  The class allegations must be struck for this reason alone. Plaintiff's class allegations should also be struck because it is clear on the face of the FAC that individualized issues would predominate in any class proceedings based on Plaintiff's claims.  As the FAC recognizes, NPAS Solutions is a debt collector, meaning that it calls consumers who

incurred debts at client facilities.  Consumers at such facilities typically give prior express consent in at least one of two ways:  (*i*) by providing their cellular telephone number to the client facility, which, according to governing regulations from the Federal Communications Commission (the "FCC"), is sufficient by itself to provide consent; or (*ii*) by signing a form consenting to receive calls from a collections agency placed on an ATDS.

There is no common proof that can determine who was and was not called with prior express consent.  Plaintiff's own allegations illustrate why she cannot satisfy the Rule 23(b)(3) predominance requirement.  The FAC makes clear that she was responsible for a debt incurred at a client facility of NPAS Solutions and that she informed an unspecified entity at an unknown time that she did not want to be called about that debt.  Courts have repeatedly recognized that the question of whether a party has revoked consent requires a highly individualized analysis relating to the specific language used by the call recipient.

As the classes pleaded by Plaintiff cannot be certified for these reasons and others discussed below, if the case is not dismissed, the Court should streamline this action by striking the class allegations.

## **BACKGROUND**

Plaintiff filed the original Complaint on May 24, 2019.  Following NPAS Solution's original Motion to Dismiss and Motion to Strike filed on July 8, 2019, Plaintiff filed the FAC on July 22, 2019.[1]  ECF No. 8.  With the exception of one paragraph (¶ 28), the FAC is substantively identical to the original Complaint.

The FAC recognizes that NPAS Solutions is "a limited liability debt collection company."  ECF No. 8, FAC ¶ 8.  The FAC contains the following conclusory allegations:  Plaintiff alleges that she received an unspecified number of calls from NPAS Solutions beginning in January

---

[1] The Motion to Dismiss and Motion to Strike was denied as moot on July 23, 2019.

2019.  ECF No. 8, FAC ¶ 26.  Plaintiff further alleges that these calls were "in an attempt to collect a debt allegedly owed by Plaintiff."  ECF No. 8, FAC ¶ 26.  Plaintiff does not allege any details about these calls or their content.  Plaintiff further alleges that she "never provided consent to be contacted by NPAS [Solutions] on her cell phone."  ECF No. 8, FAC ¶ 27.  Plaintiff does not allege that she does not owe the debt at issue or that she (or someone acting on her behalf) did not provide her telephone number to the creditor.

Plaintiff alleges that she "previously advised Defendant's predecessor-in-interest to stop calling."  ECF No. 8, FAC ¶ 26.  Plaintiff does not specify the identity of the alleged predecessor-in-interest, does not state the date on which she claims to have made this request, does not explain how she made this request or to whom she made it, and does not allege the content of her supposed request.

Plaintiff further claims that, "[u]pon information and belief," NPAS Solutions uses an ATDS to place calls.  ECF No. 8, FAC ¶ 28.  This allegation is predicated on anonymous reviews left by supposed employees for an entity they call "NPAS," including the following review dated from an anonymous "Service Unit Representative" dated January 23, 2014:

> I learned how to deal with customers over the phone. Was taught several different systems to use. The hardest part of the job was being able to meet the required quota of phone calls per hour to keep your position. <u>You had to get 14 calls an hour done and sometimes you would be stuck on one call for 45 minutes to over an hour. This made it hard to get the quota required.</u> The atmosphere was good and co-workers were great to get along with. I loved my manager.

*See* Indeed.com, company reviews, available at https://www.indeed.com/cmp/Npas/reviews?start=20 (last visited August 3, 2019).  Based on this statement, the FAC alleges, with no citation or substantiation:  "Entities operating specific call centers routinely employ ATDS technology to place calls; moreover achieving a quota of completing fourteen calls an hour without the assistance of automatic dialing is highly unlikely."  FAC ¶ 28.  The FAC omits the underlined language in which the supposed employee complained

that the alleged quota was not achievable.

Plaintiff seeks to certify three classes based on her allegations.  First, with regard to her TCPA claim, Plaintiff proposes the following class:

> All persons within the United States who received any phone call from Defendant or its agent(s) and/or employee(s), not for an emergency purpose, on said person's cellular telephone, made through the use of any automatic telephone dialing system from December 5, 2017 through the date of class certification without the prior express consent of the called person.

ECF No. 8, FAC ¶ 47.  Plaintiff also seeks to certify a class based on her Nevada state law claim with the following definition:

> All persons within the State of Nevada whom the Defendant dialed that person's telephone number on at least two occasions from December 5, 2017 through the date of class certification without the prior express consent of the called person.

ECF No. 8, FAC ¶ 59.  Plaintiff further proposes a third class definition based on her Nevada common law claim for intrusion upon seclusion:

> All persons within the State of Nevada whom the Defendant dialed that person's telephone number on at least two occasions from December 5, 2017 through the date of class certification without the prior express consent of the called person.

ECF No. 8, FAC ¶ 71.

## ARGUMENT

**I.      The Court Should Dismiss Plaintiff's Individual Claim Because She Does Not Make Plausible Claims That NPAS Solutions Violated the Law**

The FAC is based on claims regarding an unspecified number of telephone calls that NPAS Solutions supposedly made to Plaintiff, but the FAC does not provide any specific factual allegations in support of the claim that these calls were somehow unlawful.  The Court need not—and should not—accept Plaintiff's legal conclusions as true and must evaluate Plaintiff's factual allegations to determine whether they are facially plausible.  *See Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (holding that a claim survives motion to dismiss only when it has facial plausibility that the defendant is liable for the alleged misconduct); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must "state a claim to relief that is plausible on its face" to withstand a motion to dismiss); *Park v. Braun*, 181 F. App'x 670, 671 (9th Cir. 2006) (concluding that, on a motion to dismiss, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences).  Complaints that fail to assert sufficient facts to support a cognizable legal theory must be dismissed.  Fed. R. Civ. P. 12(b)(6); *see Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).  Here, instead of supporting her claims with factual allegations, Plaintiff instead relies extensively on boilerplate legal conclusions.  The FAC should therefore be dismissed.

> **A.    Plaintiff's TCPA Claim Must Be Dismissed Because She Does Not Plausibly Allege She Was Called by an ATDS**

Plaintiff fails to allege facts sufficient to support an inference that she was called via an ATDS or with an artificial or prerecorded voice—a prerequisite of a TCPA claim.  47 U.S.C. § 227.  Without these details, Plaintiff's claims are implausible and must be dismissed.

Plaintiff does not plead facts regarding the circumstances of NPAS Solutions' calls to her that could lead to the reasonable inference that NPAS Solutions used an ATDS or an artificial or prerecorded voice.  Instead, Plaintiff's claim rests "on information and belief" and inferences drawn from a single anonymous employee review.  Plaintiff falls short of "alleg[ing] **factual content** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *see Ashcroft*, 556 U.S. at 678, for the following reasons:

- She is speculating that the unnamed individual who wrote the review upon which she is relying was actually an employee with first-hand knowledge of NPAS Solutions' business practices.

- She is speculating that whatever the alleged employee wrote in 2014 remains true four years later.

- She is speculating – without any basis – that the only way for an employee to meet the alleged quota of fourteen calls per hour is to use an ATDS.  The supposed employee, however, complains that s/he could not meet this quota because calls could last upwards of 45 minutes or one hour.  Further, there are, of course, other ways that this alleged quota could be satisfied, including through inbound calls or calls placed using a manual dialer.

Courts in the Ninth Circuit have repeatedly granted motions to dismiss where, as here, an essential element of a cause of action rests on speculation.  *See, e.g.*, *Linlor v. Five9, Inc.*, No. 17-cv-218, 2017 WL 2972447, at *1 (S.D. Cal. July 11, 2017) ("Plaintiff fails to allege factual content that allows the court to draw the reasonable inference that the defendant used" an ATDS "and **the Court cannot fill that gap with speculation**" (internal quotations omitted)); *Flores v. Adir Int'l*, No. CV1500076ABPLAX, 2015 WL 12806476, at *1 (C.D. Cal. May 8, 2015) (dismissing TCPA claim where plaintiff "alleges no facts to give rise to" the "inference" that he received text messages sent via ATDS and collecting cases that reached the same conclusion); *Knutson v. Reply!, Inc.*, 2011 WL 291076, at *2 (S.D. Cal. Jan. 207, 2011) (dismissing TCPA case where "[t]here is nothing in the complaint that allows the court to infer the calls were randomly generated or impersonal").[2]  Further, several courts have rejected speculation about the use of an ATDS based on call volume to the plaintiff alone – claims better substantiated than Plaintiff's allegations based on an anonymous internet posting.  *See Hazan v. Wells Fargo & Co.*, 2019 WL 1923272, at *3 (D.N.J. April 30, 2019) ("Plaintiff urges this Court to infer from the

---

[2]    NPAS Solutions respectfully submits that this this Court's conclusion in *Peatroswky v. Persolve*, No. 2:12-cv-935, 2014 WL 1215061 (D. N.V. March 24, 2014), that a plaintiff can state a TCPA claim based simply on the plaintiff's allegation that an ATDS is used – without any factual allegations substantiating that claim – fails to meet the Supreme Court's pleading standards.  *See, e.g.*, *Hulsey v. Peddle, LLC*, No. CV 17-3843 DSF (ASX), 2017 WL 8180583, at *2 (C.D. Cal. Oct. 23, 2017) (granting a motion to dismiss where the plaintiff's allegations "consist solely of paraphrases of the definition of ATDS set forth in the TCPA"); *Orsatti v. Quicken Loans, Inc.*, No. 215CV09380SVWAGR, 2016 WL 7650574, at *3 (C.D. Cal. Sept. 12, 2016) (same).  To hold otherwise would permit a plaintiff to impermissibly "rely on the discovery process to cure such deficiencies in his complaint." *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (citing *Twombly*, 550 U.S. at 559).

number of calls that Defendant used an ATDS, Plaintiff's argument lacks adequate legal citation or support from case law."); *Trenk v. Bank of America*, 2017 WL 4170351, at *2 (D.N.J. Sept. 18, 2017) (rejecting plaintiff's allegations about ATDS use based on the number of calls to her because "[t]he complaint merely alleges that the calls and messages were 'auto-dialed,' but offers no facts to support this allegation"). Plaintiff's TCPA claim should therefore be dismissed.

### B. Plaintiff's NDPTA Claim Must Be Dismissed Because the Statute Does Not Apply to Debt Collection

Plaintiff cannot state a claim under NRS 598.0918 because it is settled law that the NDPTA does not apply to debt collection. This should not come as a surprise to Plaintiff. Her counsel, David Krieger, has represented plaintiffs in at least three cases in this District where the court has dismissed NRS 598.0918 claims arising out of debt collection calls for this exact reason. *See Marshall v. CBE Grp., Inc.*, No. 216CV02406GMNNJK, 2018 WL 1567852, at *10 (D. Nev. Mar. 30, 2018) (dismissing section 598.0918 claim and noting that "[t]he Court agrees with the courts in this District that hold that debt collection does not fall within the ambit of the NDTPA."); *Gage v. Cox Commc'ns, Inc.*, No. 216CV02708KJDGWF, 2017 WL 1536219, at *2 (D. Nev. Apr. 27, 2017) ("Plaintiff has not plead that Defendant's phone calls involved the sale of goods or services. In fact, Plaintiff concedes that the calls were in regards to debt collection. Therefore, the NDTPA does not grant Plaintiff a right to relief."); *Kervin v. GC Servs., Ltd. P'ship*, No. 2:13-CV-01461-MMD, 2014 WL 584966, at *2 (D. Nev. Feb. 12, 2014) (dismissing Section 598.0918 claim).[3]

---

[3] The Attorney General has similarly recognized that NRS 598.0918 does not apply to claims relating to debt collection. Bureau of Consumer Protection, Nevada Office of the Attorney General, http://ag.nv.gov/About/Consumer_Protection/Bureau_of_Consumer_Protection (last visited August 3, 2019) ("Not all fraudulent activity is illegal under the Nevada Deceptive Trade Practices Act, such as when another law applies that regulates a particular industry or is more specific. Examples of what is not deceptive trade include timeshares, landlord/tenant issues, debt collection, and bank or credit card problems." (emphasis added)).

Plaintiff herself alleges that she received the calls at issue in connection with debt collection.  Therefore, the NDTPA claim fails on the face of the FAC.  Plaintiff's "consumer fraud" claim under NRS 41.600 is predicated solely on the alleged violation of NRS 598.0918 (ECF No. 8, FAC ¶ 95), and that claim therefore also fails on the face of the FAC.

**C.    Plaintiff's Claim for Intrusion upon Seclusion Must Be Dismissed Because the FAC Contains Only Legal Conclusions Regarding the Elements of This Cause of Action**

Plaintiff's common law tort claim must be dismissed because she has failed to allege any facts suggesting that she suffered a "highly offensive" intrusion on her "solitude or seclusion." "To recover for the tort of intrusion, a plaintiff must prove the following elements: 1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person."  *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1279 (1995), *overruled in part on other grounds*, 940 P.2d 134 (Nev. 1997).  "The Nevada Supreme Court . . . has prescribed the following factors to assist courts in determining whether a particular action is highly offensive:  'the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded.'"  *Dobson v. Sprint Nextel Corp.*, No. 2:13-CV-00816-GMN, 2014 WL 553314, at *3 (D. Nev. Feb. 10, 2014) (quoting *PETA*, 895 P.2d at 1282) (dismissing unreasonable intrusion on seclusion claim for failure to state a claim).  Plaintiff alleges no facts in support of any of these factors.

Instead, Plaintiff's claim is premised on a legal conclusion.  Plaintiff alleges that NPAS Solutions "repeatedly and continuously placed telephone calls to the Plaintiff's phone . . . in a manner that would be considered annoying, abusive or harassing by a reasonable person, in violation of Nevada Common Law[.]"  ECF No. 8, FAC ¶ 44.  Plaintiff, however, does not allege

even the number of calls she received, the time of day that she received them, the frequency with which she received them, or any other "context, conduct or circumstances" about the alleged calls, much less any facts that would suggest "highly offensive" conduct. *Wellesley v. Chief Financial Officer* is instructive. In that case, the court dismissed invasion of privacy claims premised on debt collection calls because:

> [A]part from the allegation that Defendants repeatedly made phone calls with the intent to collect Plaintiff's debt, Plaintiff fails to state how the allegedly harassing phone calls invaded his privacy. Plaintiff does not offer any allegations suggesting that the time or manner of the phone calls was offensive. The complaint does not specify whether Defendants called Plaintiff at his home or at work, and whether they called at inappropriate times. . . . Further, the court finds that the allegations in the complaint do not indicate that Defendants' actions were highly offensive.

No. 3:10-CV-00183-LRH, 2010 WL 2926162, at *3 (D. Nev. July 20, 2010); s*ee also Dobson*, 2014 WL 553314, at *5 (holding that allegations that defendant had caused several visits by strangers to plaintiff's home in the middle of the night were insufficient as matter of law without more detailed factual content). Plaintiff's allegation is a pure legal conclusion that is plainly insufficient under the Supreme Court's decisions in *Twombly* and *Iqbal*, and her claim under Nevada common law must be dismissed.

## II. The Court Should Strike the Class Allegations Because Plaintiff Fails to Plead a Class Definition That Satisfies Rule 23

Plaintiff's class allegations should be struck based on the face of the FAC because the alleged class definition creates an impermissible fail-safe class. Further, it is obvious that Plaintiff's claim cannot serve as the basis for a class action.

As this Court has previously recognized, class defendants may move to strike class claims under Rule 12(f) if they are "facially improper." *Maldonado v. HSBC Mortgage Sys.*, *Ind.*, No. 2:16-CV-00784JADVCF, 2017 WL 3496460 at *4 (D. Nevada Aug. 215, 2015) (striking class claims); *see also Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2015 WL 709201, at

*4 (C.D. Cal. Jan. 16, 2015) ("It is thus appropriate to strike class allegations prior to discovery where the allegations make it obvious that classwide relief is not available" and the plaintiff bears the burden of making a prima facie showing that "discovery is likely to produce substantiation of the class allegations." (citation omitted)).

In light of Plaintiff's impermissible class definition and the individualized issues raised by the putative class action that are discussed below, it is clear that the barriers to class certification are insurmountable.   Under such circumstances, the class claims should be struck.   *See, e.g.*, *Pepka v. Kohl's Dep't Stores, Inc.*, No. CV164293MWFFFMX, 2016 WL 8919460, at *3 (C.D. Cal. 2016) (striking TCPA class allegations because it was apparent from the face of the complaint that "issues of revoked consent would predominate in the litigation").

### A.      Plaintiff's TCPA Class Allegations Should Be Struck Because She Alleged a Fail-Safe Class That Cannot Be Certified

Courts routinely hold that class definitions that merely recite the legal elements of a TCPA claim—which Plaintiff's class definition does here—fail under Rule 12(f) because they constitute "fail-safe" classes.

A fail-safe class is a class in which "a determination of whether a person is a member of the class is dependent on whether he/she prevails on the merits of the . . . claim alleged in the operative pleading."   *Dixon v. Monterey Fin. Servs., Inc.*, No. 15-CV-03298-MMC, 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22, 2016).   As this Court has explained:

> "When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class.   That is palpably unfair to the defendant, and is also unmanageable—for example, to whom should the class notice be sent?"

*Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1035 (D. Nev. 2018) (quoting *Kamar v. RadioShack Corp.*, 375 Fed. App'x 734, 736 (9th Cir. 2010)).   A fail-safe class is unfair to a

defendant "because under a fail-safe class definition '[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.'" *Lith v. Iheartmedia + Entm't, Inc.*, No. 1:16-CV-066-LJO-SKO, 2016 WL 4000356, at *4 (E.D. Cal. July 25, 2016) (quoting *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). The Court should strike Plaintiff's proposed class definition because it clearly violates the rule against fail-safe classes.

Plaintiff's class definition here is a bare restatement of the TCPA that would require resolution of all elements of the claim to determine class membership. The elements of the TCPA claim she brought are (*i*) a call to a cellular telephone, (*ii*) made with an ATDS, (*iii*) without prior express consent. *See* ECF No. 8, FAC ¶¶ 32-33 ("Upon information and belief, NPAS [Solutions] placed calls to the Plaintiff and the class members [*sic*] cellular phones using an ATDS without consent to place to [*sic*] such calls. As a result, Defendant's calls violated the TCPA."). Her class definition is a recitation of the same three elements: "persons . . . who received any phone call from Defendant . . . on said person's [*i*] cellular telephone, [*ii*] made through the use of any [ATDS] . . . [*iii*] without the prior express consent of the called person." ECF No. 8, FAC ¶ 47. Plaintiff's alleged common question of law and fact is also nothing more than a restatement of the TCPA: "Whether . . . NPAS [Solutions] . . . placed any phone calls to the Class (other than a message made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system to any telephone number assigned to a cellular telephone service[.]" ECF No. 8, FAC ¶ 52.[4]

---

[4]   Plaintiff identifies only two other supposed common questions of law and fact, both of which are contingent on liability being established. These supposed common questions thus do not change the fact that, under Plaintiff's definition, the determination of class membership and liability would be identical for each class member. *See* ECF No. 8, FAC ¶ 52 ("Whether Plaintiff and the Class 1 members were damaged thereby, and the extent of damages for such

Numerous district courts have struck nearly identical TCPA class definitions pursuant to Rule 12(f).  *See Dixon*, 2016 WL 4426908, at *2-3 (striking TCPA class allegations where proposed class definition included revocation of "prior express consent" as a characteristic of class membership); *Pepka*, 2016 WL 8919460, at *4  (striking class definition based on calls "not made . . . with the recipient's prior express consent") ("Without . . . a [mini-hearing on the merits] it would be impossible to determine if consent had been revoked and the calls made in violation of the TCPA."); *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 625 (E.D. Pa. 2015) (striking TCPA class "comprised of those people who received [defendant's] telephone calls without the recipient's 'prior express consent'"); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 539–40 (E.D. Mich. 2015) ("Plaintiff contends that he has not defined a class based on the issue of consent, but has instead defined a class based on the objective fact of consent, which will be established through discovery.  Plaintiff makes a distinction without a difference."); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-CV-221 CEJ, 2013 WL 275568, at *5 (E.D. Mo. Jan. 24, 2013) ("Determining class membership will require the kind of individualized determinations—the absence of prior consent and the absence of a prior business relationship—precluded by Rule 23.").  The Court should similarly strike the TCPA class allegations here in the interests of fairness and efficiency because the class definition is invalid on its face.  *Boyer*, 306 F.R.D. at 538 ("If a defendant can clearly show that a class definition is legally impermissible, fairness and efficiency require that the Court address the issue in response to a properly filed motion.").

### B.   Any Effort to Fix Plaintiff's Class Definitions Would Introduce Individualized Issues That Would Overwhelm a Class Proceeding

The Court should also strike all of Plaintiff's class allegations because it is clear on the

violation[.]"); *id.* ("Whether NPAS and its agents should be enjoined from engaging in such conduct in the future.").

face of the FAC that individualized issues would be the focus of the litigation. A class cannot be certified where individualized issues predominate over common issues. *See* Fed. R. Civ. P. 23(b)(3); *Cole v. Gene by Gene, Ltd.*, 735 F. App'x 368, 369 (9th Cir. 2018); *Stiller v. Costco Wholesale Corp.*, 673 F. App'x 783, 785 (9th Cir. 2017); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 937 (9th Cir. 2009); *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 942 (9th Cir. 2009). Only putative class members who did not consent to being called by NPAS Solutions could have claims under the TCPA (depending on the circumstances). The Ninth Circuit has recognized that Rule 23(b)(3) cannot be satisfied in a TCPA class action where "consent defenses" are "based on individual communications and personal relationships," and there is "variation in such communications and relationships." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018).[5] As described below, Plaintiff's class definitions will require individualized inquiries regarding a wide variety of communications and relationships.

### 1. Plaintiff's TCPA Class Definition Requires Individualized Adjudication of Allegations That a Call Recipient Revoked Consent

Courts have repeatedly recognized that TCPA cases against entities like NPAS Solutions that call consumers on behalf of creditors with which the consumers have preexisting relationships cannot be certified because they raise individualized issues. That is particularly true in cases like this one, where, as discussed below, the named plaintiff's claims are based on specific factual circumstances relating to whether she originally provided prior express consent

---

[5] Other circuit courts have reached the same conclusion. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 469 (6th Cir. 2017) (holding that a TCPA class action could not be certified where "[i]dentifying solicited fax recipients through a form-by-form inquiry is sufficiently individualized to preclude class certification."); *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (reversing certification in TCPA matter because there was "no class-wide proof available to decide consent and only mini-trials can determine this issue").

and later revoked it.

It is plain on the face of the FAC that NPAS Solutions frequently calls consumers who do provide prior express consent.  As Plaintiff herself recognizes, NPAS Solutions is a debt collector.  ECF No. 8, FAC ¶ 8.  As reflected in FCC orders, it is standard practice for medical and other debt collectors to contact debtors at cellular telephone numbers that the debtor provided to the creditor, thereby evidencing consent to be called:

> [A]utodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party. . . . Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

ACA Declaratory Ruling, 23 FCC Rcd. 559, 559-65 (Jan. 4, 2008).  *See also* 1992 TCPA Order, 7 FCC Rcd. 8752, 8769, para. 31 (Oct. 16, 1992); ACA Declaratory Ruling, 23 FCC Rcd. at 564, para. 9 ("[T]he provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, TCPA Omnibus Declaratory Ruling and Order, FCC 15-72 (Rel. July 10, 2015) ("2015 FCC Order") (a party can establish consent "by giving his or her wireless number to the person initiating the autodialed or prerecorded call"); *see, e.g.*, *Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789,793 (9th Cir. 2018) (finding no TCPA violation where a third-party intermediary contacted a former medical patient to assess the quality of care she received because she provided the phone number on an enrollment form with a broad disclosure).[6]

---

[6]   Courts have also found that the provision of cellular telephone numbers also constitutes prior express consent.  *See, e.g.*, *Elkins v. Medco Health Solutions, Inc.*, No. 4:12 CV 2141 TIA, 2014 WL 1663406, at *7 (E.D. Mo. Apr. 25, 2014) (finding no TCPA violation where plaintiff provided her cellular telephone number as her number for contact related to healthcare benefits); *Steinhoff v. Star Tribune Media Co.* LLC, No. 13-CV-1750 SRN/JSM,

Further, consumers at the client facility often sign forms consenting to receive autodialed calls on their cellular telephone number about a debt.  Thus, any time that NPAS Solutions places a call to a consumer who, at the very least, provided her cellular number to a client or signed a consent form, that call is made with prior express consent, and the recipient does not experience a cognizable injury for the purposes of standing, much less a potential TCPA violation.

Plaintiff's individual claim illustrates exactly why a class defined to include anyone called without prior express consent cannot be litigated on a class-wide basis.  Although the FAC provides few details, it appears that her claim is that NPAS Solution called her after she revoked consent to being called about her debt because:

- Plaintiff does not dispute that NPAS Solutions called her about her own debt. *See* ECF No. 8, FAC ¶ 26.

- Plaintiff carefully pleads that she "never provided consent to be contacted by NPAS [Solutions] on her cell telephone." *See* ECF No. 8, FAC ¶ 27.  But Plaintiff is silent on her provision of her cellular telephone number to a client facility, which is alone enough to provide prior express consent to receive calls from the facility's collections agent. *See supra* p. 3.

- Plaintiff's claim that she was called by NPAS Solutions without prior express consent is predicated on her allegation that she told an unspecified "predecessor-in-interest" to stop calling. ECF No. 8, FAC at ¶ 26.  In other words, Plaintiff claims that she revoked consent during her call with this "predecessor-in-interest."

For every class member like Plaintiff, an individualized inquiry would be necessary to determine whether a supposed revocation of consent was legally effective such that any subsequent call would be "without prior express consent."  For example, it is unclear from the FAC (*i*) whether Plaintiff provided consent to a client facility (*e.g.*, whether she provided her cellular telephone number to the client facility, signed a form consenting to receiving calls placed by an ATDS, provided consent in some other way, or not at all) and, (*ii*) if she did provide

2014 WL 1207804, at *3 (D. Minn. Mar. 24, 2014) (finding no TCPA violation where plaintiff provided her cellular telephone number to defendant).

consent originally, to whom Plaintiff subsequently made the request to stop calling, when such a request was made, and whether what she said was sufficient to revoke consent. These questions apply equally to anyone who claims she was called without prior express consent because she revoked consent and was subsequently called.

Determining whether a party provided consent is itself highly fact specific. *See Fober*, 886 F.3d at 793 (noting that, according to the FCC, "the scope of consent must be determined upon the facts of [the] situation [in which the person gave consent]") (emphasis added) (quoting *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7990 (2015). Determining whether that consent was subsequently revoked requires even further individualized inquiry. For that reason, district courts in the Ninth Circuit and elsewhere have recognized that claims based on revocation of consent cannot be adjudicated on a class-wide basis. *See Pepka*, 2016 WL 8919460, at *3 ("The proposed class cannot meet the requirements of Rule 23 because individualized issues of revoked consent would predominate in the litigation, and the class would constitute an impermissible fail-safe class."); *Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV-14-6256-JGB-JPRX, 2016 WL 3456939, at *11 (C.D. Cal. Apr. 14, 2016) (denying class certification) ("The revocation of consent presents greater evidentiary difficulties than the initial presence or absence of consent, as the interpretation of an act as revocation, the timing of such revocation, and similar questions are more likely to require resolution on an individualized basis." (citing *Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013))); *see also Cholly v. Uptain Grp., Inc.*, No. 15 C 5030, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017) (striking class definition because "[t]he class members would not be able to present the same evidence that will suffice for each member to make a prima facie showing [that] the recipients of defendants' telemarketing calls had validly revoked his or her prior consents (citing *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287,

293 (N.D. Ill. 2014))).  These individualized inquiries are particularly cumbersome because each class member bears the burden of coming forward with evidence to show that they revoked consent.  *Saulsberry*, 2016 WL 3456939, at *11 ("Defendants cannot prove, for example, that they did not receive a written revocation of consent or that they did not interpret certain of plaintiff's statements to constitute oral revocation of consent without plaintiff first asserting that such written or oral revocation took place.").

### 2. Plaintiff's TCPA Class Definition Also Requires Individualized Adjudication of Allegations That a Call Recipient Never Provided Prior Express Consent

The problems with Plaintiff's TCPA class definition, however, do not end with revocation of consent.  A class definition of individuals who were called "without prior express consent" encompasses not only those individuals who once provided prior express consent and later claim to have revoked it, but also individuals who claim that they never provided prior express consent and that a "wrong number" was reached.  Such allegations are similarly specific to the individual circumstances of each class member and cannot be resolved without a mini-trial for a wide variety of reasons.

To start, the fact that a call recipient reports that a "wrong number" was reached does not mean that individual was called without prior express consent.  For example, a debtor who provided prior express consent may report that she was a "wrong person" to avoid discussions with a collector.  *See, e.g.*, *Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247, at *2 (N.D. Cal. Apr. 28, 2019) (denying class certification and noting that "an evasive customer may reply with 'wrong number' when he answers a call regarding his delinquent account").

Circumstances may also arise in which a call recipient alleges a "wrong number" was reached—but prior express consent was nonetheless provided—because admission forms at medical facilities are sometimes filled out by a family member or friend, and that person may

supply her own telephone number on the admission form.  Under such circumstances, the person who filled out the admission form may have consented to her cellular telephone number being autodialed even if she was not the debtor.  *See Bridge*, 294 F. Supp. 3d at 1039 (denying class certification because, *inter alia*, individualized issues of consent predominated, which was illustrated by plaintiff's own circumstances because his mother was the customary user of the cellular telephone for which plaintiff was listed as the subscriber, and she had provided prior express consent); *Gutierrez v. Barclays Grp.*, No. 10CV1012 DMS BGS, 2011 WL 579238, at *3 (S.D. Cal. Feb. 9, 2011) (finding that a husband possessed  "common authority" over his wife's cell phone such that he could give the defendant sufficient "prior express consent" under the TCPA).  *See also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) (where plaintiff provided the cellular telephone number of her housemate to defendant, there would be no TCPA violation if the housemate consented to her providing his cellular telephone number for autodialing purposes).  Individualized issues are inevitable under these circumstances.  *See, e.g.*, *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2015 WL 5604400, at *10 (S.D. Cal. Sept. 23, 2015) ("The problem highlighted by these various methods of expressing consent is that individualized inquiry would be required to determine the consent profile of each putative class member.").

Even if a call recipient never consented to receiving autodialed calls, that does not end the analysis.  A safe harbor based on NPAS Solutions' reasonable reliance could also apply, precluding a TCPA claim.  In *ACA International v. Federal Communications Commission*, the court invalidated the FCC's limitation of a "safe harbor" to only one call—but not more—after a consenting party's cellular telephone number was reassigned.  885 F.3d 687, 706 (D.C. Cir. 2018).  The FCC's safe harbor was based on a concern about situations in which a new subscriber after a cellular telephone reassignment "could 'purposefully and unreasonably' refrain from

informing a good-faith caller about a number's reassignment 'in order to accrue statutory penalties.'"  *Id.* at 705 (citing 30 FCC Rcd. at 8011).  The D.C. Circuit invalidated the regulation implementing the safe harbor because the FCC provided no justification for why reasonable reliance considerations ceased to be reasonable after just one call.  *Id.* at 707 (noting that the FCC acknowledged this possibility as well (citing 30 FCC Rcd. at 8009-10)).  Therefore, reliance would be just as reasonable in the case of a second call at the very least.  *Id.*  The court implicitly accepted the notion that the TCPA supports a reasonable reliance component and plainly indicated that it should be applied more broadly.  Other courts have similarly found that there is no TCPA violation if a call is made to a reassigned number and the calling party reasonably relied on prior express consent provided by the consumer.  *See Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12-CV-1721-BEN WVG, 2014 WL 1744136, at *11 (S.D. Cal. Apr. 30, 2014) ("[T]he documents provided gave Defendant a good-faith basis to believe that it had consent to contact Plaintiff at that number.  The Court notes that the cell number [was] listed as her 'home' number. <u>There appears to have been little that the Defendant could have done to further ascertain whether there was consent, except to call Plaintiff at her home number</u>." (emphasis added)), *aff'd*, 671 F. App'x 989 (9th Cir. 2016).[7]

  In light of the possibility of reasonable reliance on previously provided express consent, individualized inquiries are required to determine whether a call to a reassigned number was made with prior express consent.  It would be necessary to examine whether, for example, the

---

[7]  *See also Roark v. Credit One Bank, N.A.*, 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018) (dismissing TCPA claim because the defendant had prior express consent from the prior holder of the cellular telephone number and the defendant "had no reason to know that the telephone number had been reassigned"); *Danhey v. Time Warner Cable Enters.*, 2015 WL 5534094, at *6-7 (E.D.N.C. Aug. 6, 2015) (rejecting TCPA claim where caller was relying in good faith on consent of prior user of telephone number; "Under the circumstances presented, defendant's good faith belief that it had consent to call the [cellular telephone] number would make imposition of liability under section 227(b) unjust.").

original owner of the cellular telephone number at issue had provided prior express consent and whether the calling party had ever been notified that the number had been reassigned.

For all of these reasons, mini-trials would be necessary with respect to each call that was allegedly made "without prior express consent."   Unsurprisingly, courts routinely decline to certify TCPA classes where, as here, individualized inquiries are required to determine whether call recipients consented to being autodialed.  *See, e.g.*, *Gannon v. Network Tel. Servs., Inc.*, 628 F. App'x 551, 551-52 (9th Cir. 2016*)* (affirming denial of a TCPA class because the district court would be required to determine whether the caller consented to receive text messages in a variety of factual scenarios, each dependent on the individual's relationship with the defendant); *Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 630 (S.D. Cal. 2015) (denying certification of a TCPA class because "determining whether a particular class member provided his or her wireless phone number to an underlying creditor requires an individualized inquiry into the particular circumstances in which the debt arose, and such individualized inquiries predominate over any issue common to the class," and noting that this is frequently the case where TCPA actions involving debt collections are concerned); *Craftwood II, Inc. v. Wurth Louis & Co.*, No. SACV1700606DOCKESX, 2018 WL 6258883, at *8 (C.D. Cal. Oct. 2, 2018) (finding that the consent defense offered by the defendant in a TCPA case was sufficient to create individualized issues that defeated predominance); *Botelho v. Tech. Med. Advancements LLC*, No. 216CV08085SVWMRW, 2017 WL 10521412, at *3 (C.D. Cal. Dec. 22, 2017) (denying class certification for a TCPA claim because the "question of prior express permission is unique to each [p]laintiff and the Court would have to make detailed factual inquiries regarding whether each fax recipient granted prior express permission").

### C.   Plaintiff's State and Common Law Class Claims Should Be Struck Because They Also Raise Individualized Issues

Plaintiff's state law class allegations similarly fail because they raise at least as many individualized issues as TCPA claims.  Even if Plaintiff had stated a claim for either cause of action—which she has not—both classes are based on lack of "prior express consent of the called person."  ECF No. 8, FAC ¶¶ 47, 59.  That raises all of the foregoing individualized issues and dooms any effort to certify a class for these claims.  Further, both the statutory and common law claims raise another set of individualized issues because proof of the absence of prior express consent is not enough; the plaintiff must also show that the call(s) would be "considered by a reasonable person to be annoying, abusive or harassing" (NRS 598.0918) or "highly offensive" to a reasonable person (intrusion upon seclusion).  *See* Sections I.B, I.C.  There is plainly no objective metric that can be used to determine what pattern of calls meets this standard.  Instead, highly individualized inquiries would be required—and that cannot be done on a class-wide basis.  *See, e.g.*, *Murray v. Fin. Visions, Inc.*, No. CV-07-2578-PHX-FJM, 2008 WL 4850328, at *5 (D. Ariz. Nov. 7, 2008) ("Similarly, invasion of privacy claims require highly individualized determinations of fact and law that make class certification under Rule 23(b)(3) inappropriate."); *see generally Vinole*, 571 F.3d at 937 (class certification inappropriate where individualized issues predominate); *Desai*, 573 F.3d at 942 (9th Cir. 2009) (same).

## CONCLUSION

For the foregoing reasons, (*i*) Plaintiff's claims should be dismissed because she has failed to plausibly allege that NPAS Solutions called her using an ATDS or an artificial or prerecorded voice and she has also failed to allege facts in support of essential elements of her Nevada state law claims; and (*ii*) Plaintiff's class allegations should be struck because Plaintiff's underlying claims fail and because the class allegations do not satisfy Rule 23.

Dated this 5th day of August, 2019.

                                        **SPENCER FANE LLP**


                                        */s/ Mary Bacon*
                                        John H. Mowbray (NV Bar No. 1140)
                                        Mary E. Bacon (NV Bar No. 12686)
                                        400 S. Fourth Street, Suite 500
                                        Las Vegas, Nevada 89101
                                        *Attorneys for Defendant*
                                        *NPAS Solutions, LLC*

23

**CERTIFICATE OF SERVICE**

1.          On August 5, 2019, I served the following document(s):

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

2.          I served the above-named document(s) by the following means to the persons as listed below:

          [X]     a. ECF System (attach the "Notice of Electronic Filing" or list all persons and addresses):
                    robert@tzalllegal.com

          [ ]     b. United States mail, postage fully prepared (list persons and addresses):

          [ ]     c. Personal Service (List persons and addresses):

          [ ]     For a party represented by an attorney, delivery was made by handling the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

          [ ]     For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

          [ ]     d. By direct email (as opposed to through the ECF system (list persons and email addresses):

                    Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful.

          [ ]     e. By fax transmission (list persons and fax numbers):

                    Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

          [ ]     f. By messenger:

                    I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger service. (A declaration by the messenger must be attached to this Certificate of Service).

          I declare under penalty of perjury that the foregoing is true and correct.

                                        /s/ Adam Miller
                                        An employee of Spencer Fane LLP